2013-1151

# United States Court of Appeals
# for the Federal Circuit

E2INTERACTIVE, INC. and
INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC.,

*Plaintiffs-Appellees,*

*v.*

BLACKHAWK NETWORK, INC.,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Western District of Wisconsin in case no. 09-CV-0629, Magistrate Judge Stephen L. Crocker.*

## BRIEF OF PLAINTIFFS-APPELLEES

FRANK G. SMITH, III
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (Tel)
(404) 881-7777 (Fax)

ROBIN L. MCGRATH
PAUL HASTINGS LLP
1170 Peachtree Street, Suite 100
Atlanta, GA 30309
(404) 815-2400 (Tel)
(404) 815-2424 (Fax)

*Counsel for Plaintiffs-Appellees*

JUNE 24, 2013

# CERTIFICATE OF INTEREST

Counsel for Appelleess, e2Interactive, Inc., and Interactive Communications International. Inc., certify the following:

1.     The full name of every party or amicus represented by me is:

   e2Interactive, Inc., and Interactive Communications International. Inc.


2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   InComm Holdings, Inc.


4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Alston & Bird LLP:  Frank G. Smith, III, Siraj M. Abhyankar, George D. Medlock, Holly S. Hawkins, Labriah D. Lee

   Paul Hastings LLP: Robin L. McGrath, David S. Moreland

   Quarles & Brady: Matthew J. Duchemin

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................................1

STATEMENT OF ISSUES ..................................................................................2

STATEMENT OF THE CASE ..............................................................................3

I.      The District Court Proceedings. ........................................................3

II.     The Jury Verdict. ...............................................................................7

III.    Post-Trial Motions. ...........................................................................8

STATEMENT OF FACTS ...................................................................................9

I.      Overview of the Relevant Technology. ..............................................9

II.     The '439 Patent. ..............................................................................10

III.    Blackhawk's System for Authorizing Stored-Value Cards. ...........13

IV.     Blackhawk's Requests for Reexamination of the '439 Patent. .....16

        A.      Blackhawk's Request for *Ex Parte* Reexamination. ..........16

        B.      Blackhawk's Request for *Inter Partes* Reexamination. .....17

V.      The District Court Proceedings. .....................................................17

        A.      InComm's Expert Report on Infringement Accused
                Blackhawk's Stored-Value Card Authorization System as a
                Whole of Infringing Claims 1 and 19. .................................18

        B.      Mr. Maliga's Trial Testimony Was Consistent with His Expert
                Report. ..................................................................................19

        C.      Ms. Breitzke Offered a New Claim Construction Position and
                Non-Infringement Theory for the First Time at Trial. ........20

        D.      The Jury's Finding of Infringement and Damages. ............22

SUMMARY OF THE ARGUMENT ....................................................................23

ARGUMENT ..................................................................................................25

I.      Standard of Review .........................................................................25

II.     The District Court's Claim Constructions Were Correct. ..............26

        A.      The District Court's Construction of the Determining Step Is
                Mandated by the Intrinsic Record. .....................................26

# TABLE OF CONTENTS
### (continued)

**Page**

1. The Claim Language Mandates the District Court's Construction. ..........................................................................27

2. The Specification Supports the District Court's Construction. ..........................................................................30

    i. The Specification Does Not Limit the Recited Determination to the Terminal Identifier. .....................30

    ii. The Specification Does Not Limit the Recited Determination to the Transaction Type........................34

    iii. The Inventors Explicitly Recited the Use of Terminal Identifiers When They Wanted to Do So. .....36

B. The Intrinsic Evidence Repudiates Blackhawk's Construction of the Determining Step. ....................................................37

    1. Blackhawk Misinterprets the Claim Language.......................38

    2. The Specification Refutes Blackhawk's Construction. ...........39

    3. InComm's Statements During Reexamination Do Not Support Reading Either a Terminal Identifier or a Transaction Type Limitation into the Determining Step.........40

        i. The Examiner Interview Does Not Support Blackhawk's Construction............................................41

        ii. Other Statements Made by InComm During Reexamination Do Not Support Blackhawk's Construction................................................................43

            (a) The Quotes in Table 1 of Blackhawk's Brief Do Not Constitute a Disclaimer. .........................43

            (b) The Statements Distinguishing the Weber Patent in Table 2 of Blackhawk's Brief Do Not Constitute a Disclaimer. ...............................45

            (c) Statements in Table 3 of Blackhawk's Brief Do Not Constitute a Disclaimer. .........................46

C. The District Court's Construction of the Initiating Step Is Supported by the Intrinsic Record.......................................47

# TABLE OF CONTENTS
### (continued)

**Page**

      1.     The Claim Language Does Not Support Blackhawk's Construction. ............................................................47

      2.     Blackhawk's Construction Imports Limitations into the Specification. ...........................................................48

      3.     Claim 12 Does Not Impose a Central Processor Limitation. ..............................................................50

III.    The District Court Did Not Abuse Its Discretion in Refusing to Strike the Testimony of InComm's Expert. .............................................51

    A.    Mr. Maliga's Opinion Regarding BLISS Was Adequately Disclosed. ...........................................................52

    B.    Any Error in Not Striking Mr. Maliga's Testimony Was Harmless. ..............................................................52

      1.     The Verdict of Infringement Was Based on BLAST Performing All Claimed Steps. ...................................53

      2.     Blackhawk's Own Expert Testified that BLISS Performed the Initiating Step. ...................................53

IV.    The District Court Did Not Abuse Its Discretion in Denying Blackhawk's Rule 60(b) Motions. ...............................................55

    A.    InComm Did Not Surprise Blackhawk at Trial. ...............56

    B.    InComm Did Not Misrepresent Mr. Maliga's Testimony or Engage in Misconduct Before the District Court. ............56

V.    THIS COURT SHOULD NOT REQUIRE REASSIGNMENT TO A DIFFERENT JUDGE IN THE CASE OF REMAND .................58

CONCLUSION ...................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Land Forwarders, Inc. v. United States,*
   172 F.3d 1338 (Fed. Cir. 1999) ....................................................25, 3

*Applied Med. Resources Corp. v. United States Surgical Corp.,*
   147 F.3d 1374 (Fed. Cir. 1998) ...........................................................26

*Blue v. Int'l Bhd. of Elec. Workers Local Union,*
   676 F.3d 579 (7th Cir. 2012) ...............................................................55

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
   576 F.3d 1348 (Fed. Cir. 2009) ...........................................................57

*CIAS, Inc. v. Alliance Gaming Corp., et al.,*
   504 F.3d 1356 (Fed. Cir. 2007) ....................................................31, 32

*CollegeNet, Inc. v. ApplyYourself, Inc.,*
   418 F.3d 1225 (Fed. Cir. 2005) ....................................................36, 49

*Cybor Corp. v. FAS Techs., Inc.,*
   138 F.3d 1448 (Fed. Cir. 1998) ...........................................................25

*D.M.I., Inc. v. Deere & Co.,*
   755 F.2d 1570 (Fed. Cir. 1985) ...........................................................29

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
   849 F.2d 1430 (Fed. Cir. 1988) ...........................................................40

*Eolas Techs., Inc. v. Microsoft Corp.,*
   457 F.3d 1279 (Fed. Cir. 2006) ...........................................................58

*Epistar Corp. v. ITC,*
   566 F.3d 1321 (Fed. Cir. 2009) ...........................................................40

*Green v. Bisby,*
   869 F.2d 1070 (7th Cir. 1989) ...............................................................55

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008) ......................................................... 29

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
558 F.3d 1368 (Fed. Cir. 2009) ......................................................... 25

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ......................................................... 30

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005) ......................................................... 50

*Kara Tech. Inc. v. Stamps.com, Inc.*,
582 F.3d 1341 (Fed. Cir. 2009) ......................................................... 39

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed. Cir. 1999) ......................................................... 36

*Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) ............................................. 40, 43, 45

*Lonsdorf v. Seefeldt*,
47 F.3d 893, 897 (7th Cir. 1995) ......................................................... 58

*Marquip, Inc. v. Fosber Am., Inc.*,
198 F.3d 1363 (Fed. Cir. 1999) ......................................................... 26

*McCormick v. City of Chicago*,
230 F.3d 319 (7th Cir. 2000) ......................................................... 55

*Microprocessor Enhancement Corporation v. Texas Instruments, Inc.*,
520 F.3d 1367 (Fed. Cir. 2008) ......................................................... 50

*Peters v. Gilead Sciences, Inc.*,
429 F. App'x 623 (7th Cir. 2011) ............................................... 26, 55

*Props. Unlimited*,
384 F.3d at 921 ......................................................... 55

vi

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ty Incorporated v. Softbelly's Incorporated*
   353 F.3d 528, 536 (7th Cir. 2003) ....................................................58

*Varhol v. Nat'l R.R. Passenger Corp.*,
   909 F.2d 1557 (7th Cir. 1990) ........................................................55

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ........................................................34

**STATUTES**

35 U.S.C. § 317(b) (2002) ..................................................................1, 17

**OTHER AUTHORITIES**

Civ. Proc. Rule 6(b)(2)........................................................................55

Fed. R. Civ. P.

   50............................................................................................................55
   59............................................................................................................55
   60(b) .......................................................................................................2

## STATEMENT OF RELATED CASES

InComm is not aware of any pending district court actions related to this appeal.  The patent at issue, U.S. Patent No. 7,578,439 ("the '439 Patent"), is the subject of co-pending reexamination Control No. 95/001,464, which was initiated by Blackhawk.  Although claims 1 and 19 at issue in this appeal currently stand rejected by the Patent Office and are on appeal to the Patent Trial and Appeal Board, InComm has recently filed a Petition to Terminate that reexamination due to Blackhawk's failure to sustain its burden of proving the invalidity of claims 1 and 19 in the district court proceedings.  *See* 35 U.S.C. § 317(b) (2002) ("[o]nce a final decision has been entered against a party in a civil action . . . that the party has not sustained its burden of proving the invalidity of any patent claim in suit . . . an inter partes reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office.").  Accordingly, if there is an appeal of the Board's decision in which the Board has either affirmed the Examiner's rejection of claims 1 and 19 or granted InComm's Petition to Terminate, that appeal will be to this Court.

## STATEMENT OF ISSUES

1.     Whether the district court correctly construed the "Determining Step" to not require an evaluation of the terminal identifier or transaction type in the requested transaction, given that neither the claim language nor the specification limits the manner in which the Determining Step is to be performed, and Blackhawk admitted during reexamination that no such limitations exist?

2.     Whether the district court correctly construed the "Initiating Step" to not require that the "central processor" perform or process the requested transaction, where neither the claim language nor the specification mandates that the central processor perform the Initiating Step and where the plain meaning of "initiating" is something other than performing or processing?

3.     Whether Blackhawk has met its high burden of establishing that the district court abused its discretion when it refused to strike the trial testimony of InComm's expert that Blackhawk's expert's non-infringement theory, proffered for the first time at trial, did not avoid infringement?

4.     Whether Blackhawk has met its high burden of establishing that the district court abused its discretion when it denied relief under Rule 60(b) of the Federal Rules of Civil Procedure, where the record shows that InComm neither surprised Blackhawk at trial nor engaged in trial misconduct?

## STATEMENT OF THE CASE

### I.    The District Court Proceedings.

On October 14, 2009, e2Interactive, Inc. and Interactive Communications International, Inc. (collectively, "InComm") filed suit in the United States District Court for the Western District of Wisconsin against Blackhawk Network, Inc. ("Blackhawk") alleging infringement of the '439 Patent.  The '439 Patent is directed to a "system and method for authorizing stored-value card transactions." After a nearly one-year delay due to Blackhawk's sequential filing of unsuccessful motions to disqualify InComm's counsel and to transfer, on October 7, 2010, InComm filed an amended complaint asserting infringement of both the '439 Patent and U.S. Patent No. 7,630,926 ("the '926 Patent") (A5347).

On March 24, 2011, the parties filed competing motions for claim construction, in which they asked the district court to construe several claim terms in independent claims 1 and 19 of the '439 patent, including: (i) "determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" (the "Determining Step") and (ii) "initiating the requested transaction" (the "Initiating Step") (A5635, 49; A5587, 93).  Blackhawk proposed to construe the Determining Step to mean "the central processor determines (1) whether the terminal identifier in the request matches a terminal identifier associated with the card identifier assigned to the stored value card; and (2)

whether the associated terminal identifier is authorized for the specific transaction type in the request" (A5587).  Noting that "[n]either the claim language nor the specification limit the manner in which these 'determining' steps are carried out," InComm proposed to construe the Determining Step to mean "making a decision as to whether the transaction type requested by the requesting terminal is of a transaction type that the requested terminal is allowed to request for the stored value card" (A05734-5).

Blackhawk proposed to construe the Initiating Step to mean "the central processor performs the requested transaction," arguing that the claims' preambles "state that it is the central processor that performs the requested transaction" (A5593).  InComm disputed Blackhawk's contention that the preamble requires the central processor to perform the Initiating Step and proposed to construe the Initiating Step to mean "actuating the processing of the requested transaction" (A5744).

On April 25, 2011, the district court denied both parties' motions, finding that neither had met its "burden to persuade the court that construction of [any] specified term[s was] necessary to resolve a disputed issue concerning infringement or invalidity" (A5766-67).   While the district court did not construe any terms, it did invite the parties to "ask for construction on summary judgment or

at trial" with a more detailed explanation as to why construction was needed to resolve disputed issues of invalidity or infringement (A5768).

Thereafter, the parties filed summary judgment motions. Blackhawk moved separately for summary judgment of non-infringement as to both patents-in-suit (A5769-802). InComm moved for summary judgment on Blackhawk's inequitable conduct counterclaim (A8185-86). In its motion regarding the '439 Patent, Blackhawk again requested construction of the Determining Step, this time proposing that it be construed to mean "determining whether the terminal **identifier** is authorized for the specific transaction type in the request" (A5782) (emphasis added). Blackhawk did not request construction of the Initiating Step. InComm opposed Blackhawk's motion, asserting the same construction for the Determining Step that it had previously advanced (A5815-16).

Given the lack of evidence to support its inequitable conduct claim, Blackhawk did not oppose InComm's motion, and the Court granted summary judgment of no inequitable conduct (A5893-94). The district court also granted Blackhawk's pre-*Akamai* summary judgment motion on the '926 Patent, finding that Blackhawk could not be liable for joint infringement under the then-current legal standard for joint infringement (A5954-63). The district court denied Blackhawk's motion with regard to the '439 Patent, agreeing with InComm that the Determining Step did not need to be based on the "terminal identifier" (A5912-

5

23).  Because Blackhawk did not seek construction of the Initiating Step, the district court did not construe that limitation.

Following the pretrial conference, the district court further held that the Determining Step did not require an evaluation of the "transaction type" in the requested transaction (A6010-13).  The district court did agree with Blackhawk that the preambles of claims 1 and 19 were limiting,  but it did not construe or otherwise give meaning to any term within the preambles, and it certainly did not construe the Initiating Step to require performance by the central processor (A6019-22; A6040-41).

Trial began on February 21, 2012.  During trial, Blackhawk's expert, Lori Breitzke, testified that Blackhawk did not infringe the '439 Patent because, among other reasons, Blackhawk's acquiring switch known as "BLAST" – the component InComm identified as the claimed "central processor" – did not perform the Initiating Step (A6894:18-95:21).  To InComm's surprise, however, Ms. Breitzke also testified that the preambles of the claims **required** that the central processor perform the Initiating Step, notwithstanding that (i) she had not offered that opinion in her expert report; and (ii) the Court had never construed the preambles or Initiating Step to require the Initiating Step to be performed by the central processor (A6805:1-16, A6806:9-10; A6019-22; A6040-41; A6803-07; A6817; *see also* A5507-8; 16).  Based on this improper construction, Ms. Breitzke began to

6

opine that even though a different component of Blackhawk's system – the BLISS platform – did initiate the transaction, Blackhawk did not infringe because BLISS was not a "central processor" (A6803-07; A6817; A6981-82). In other words, after submitting Ms. Breitzke's expert report, Blackhawk developed a new non-infringement theory based upon a construction that required the central processor to perform the Initiating Step, the very construction the district court had refused to adopt.

When InComm's counsel realized that Ms. Breitzke was construing the Initiating Step contrary to the law of the case, she objected on the grounds that such testimony constituted an improper attempt to usurp the Court's duty to construe claim terms (A6806-07). Agreeing that it had never construed the patent to require the Initiating Step to be performed by the central processor, the district court sustained InComm's objection (A6827-28). It did, however, give the parties an opportunity to brief whether the Initiating Step required performance by the central processor (A6031, 35-37). Following briefing, the district court confirmed that there was nothing in the patent that required the Initiating Step to be performed by the central processor (A06040-41).

## II.    The Jury Verdict.

Trial was bifurcated into liability and damages phases (A7106). In the liability phase, the jury found that Blackhawk infringed both claims 1 and 19, and

thereafter the damages phase began (*id*.).  At the close of evidence in the damages phase and pursuant to Blackhawk's request, the district court instructed the jury that "if you conclude that BLISS performs the initiating step of claims 1 and 19 of the '439 Patent, **<u>you should not award damages</u>**" because to do so would be "too speculative" since InComm's damages expert did not offer an opinion on damages for transactions that passed from BLAST to BLISS (A108).  Thereafter, the jury awarded InComm $3,475,159.95 in reasonable royalties for Blackhawk's infringement, an amount corresponding to exactly one-cent for each transaction processed by BLAST (A111, A75).  In so awarding, the jury made clear that it found that Blackhawk infringed because BLAST, not BLISS, performed the Initiating Step.

## III.    Post-Trial Motions.

On March 16, 2012, the district court held a telephonic status conference, during which it purported to extend the deadline by which the parties could file post-trial motions to April 20, 2012 (A8243).  At that time, InComm's counsel pointed out that the rules did not permit the deadline for post-trial motions to be extended, but Blackhawk nevertheless chose to file its post-trial motion on April 20, 2012, after the original deadline of March 30, 2012, prescribed by the Federal Rules (A7760).  In its opposition to Blackhawk's motion, InComm again noted that the filing deadline for Blackhawk's motion was not extendable, and it asked

the district court to convert Blackhawk's motion to a Rule 60 motion for relief from judgment, as required by Seventh Circuit law (A7804-07). The district court agreed, converted Blackhawk's motion to a Rule 60 motion, and subsequently denied Blackhawk's motion (A75). In denying the motion, the district court found that Blackhawk's disagreements with the Court's legal conclusions were an insufficient basis for relief under Rule 60 (A65). On January 4, 2013, Blackhawk filed its notice appeal from that order, as well as from other orders by the district court (A7856-60).

## STATEMENT OF FACTS

### I.    Overview of the Relevant Technology.

The technology at issue concerns stored-value cards, *i.e.*, pre-paid cards that can be used in a number of ways including the purchase of goods and/or services (A5628). Examples of stored-value cards include gift cards, prepaid long distance cards, and downloadable music cards (*id*; A6256-57). A variety of transactions can be performed with respect to stored-value cards. For example, they may be activated (converted from an inactivate state to a state that allows the card to be used), deactivated (placed into an inactivate state), redeemed (used to make purchases), or reloaded (value is added to a card) (A6372-73). InComm and Blackhawk are direct competitors in the stored-value card industry (A6212).

## II.    The '439 Patent.

The '439 Patent claims computer-implemented methods (claims 1-11), systems (claims 12-18), and computer programs (claims 19-29) for processing a stored value card transaction request in a "card data management system" which comprises a central processor, a communications network, point of sale (POS) terminals, and a database of card records (A130 at Col. 14:65-18:49).  The '439 Patent allows for greater control over the entities that can request certain types of transactions such as activation, deactivation, reloading, and redemption of stored-value cards (A118-120 at FIGS. 4-6; A125 at Col. 4:13-31).  This control is accomplished by establishing a hierarchy of, from top to bottom, merchants, stores/locations, and terminals and then establishing controls or authorizations at any level of the hierarchy (*i.e.*, at the merchant, store/location, or terminal level) (*id.*).  Figure 4 of the '439 Patent, shown below, illustrates this merchant/location/terminal hierarchy used with Merchant 1 and Merchant 2:

**Figure 4 of '439 Patent (annotated):**



(A118 '439 Patent Fig 4.)

InComm asserted independent claims 1 and 19 of the '439 Patent. Those claims are virtually identical, the principal difference being that claim 1 recites a method, whereas claim 19 recites a computer program comprising instructions for performing a set of actions (A130-32).

The Determining Step is one of the key features of the asserted claims. Through this step, an additional layer of control and security is provided which permits specific merchants, store/locations, or terminals to be granted or denied the privilege to request specific **_types_** of transactions (*e.g.*, activation or deactivation) (*id*.; *see also* A126-27 at Col. 5:48-60; 5:66-6:3; 6:65-7:10; 7:17-35; 7:41-48). As described in the '439 patent, when a transaction request is sent from a retailer's POS terminal, a determination is made not just that the requesting terminal or merchant is recognized by the system (*i.e.,* has authority to transact with the system), as is the case with the prior art, but that the terminal that initiated the request is permitted to request the requested transaction **_type_** (*e.g.,* activation) (*id.*). This unique feature allows a retailer much greater control over which of its terminals can perform which transactions.

To implement this additional level of control, terminal authorizations can be given at any level of the merchant, store/location, terminal hierarchy (A125 at Col. 4:13-31; A126 at Col. 5:36-38; A118-20 at FIGS. 4-6). For instance, transaction type authorizations can be given at the merchant level, which means that all of the

11

merchant's terminals are permitted to request the authorized transaction types

(A125 at Col. 4:13-31; A126 at Col. 6:21-35, 43-59; A118-20 at FIGS. 4-6).  For

example, Merchant A, and thus all of Merchant A's terminals in all of its stores,

could be authorized to request activation, deactivation and reloading of a stored-

value card, while Merchant B, and thus all of Merchant B's terminals, might be

authorized only to perform redemptions (*id.*).

Transaction type authorizations could also be allocated at the store/location

level, so that all terminals within a particular store/location may be authorized for

the transaction type, *e.g.*, activation, whereas terminals within another

store/location may or may not be so authorized (A126-27 at Col. 6:60-7:62).  At

the terminal level, certain terminals within a store might be authorized to request,

*e.g.*, activation, while other terminals within that store might be authorized only for

redemptions (*id.*).   This ability to allocate transaction type authorizations at **any**

level of the hierarchy is discussed in the specification of the '439 patent:

> The present invention provides a system for managing stored-value
> cards that provides control over the entities that can request
> activation, deactivation, reloading and redemption of stored-value
> cards. This control is accomplished by establishing a hierarchy of
> merchants, locations and terminals **and allocating authorizations
> to the various levels**. . . .**The system allows for controls to be
> established at any of these levels . . .**

(A125 at Col. 4:14-31) (emphasis added).

### III.    Blackhawk's System for Authorizing Stored-Value Cards.

Blackhawk operates a system that processes transaction requests for stored value cards (A5410).  Blackhawk's system had the ability to, among other things, activate, redeem, and reload stored value cards at merchant locations, while controlling the transaction types that can be performed by particular merchant terminals (*id.*).  As the jury found, Blackhawk operated this system in a manner that infringed the asserted claims of the '439 patent.

Specifically, Blackhawk performed stored-value card transactions through computer programs residing on a central processor called the Blackhawk Acquiring Switch, also known as "BLAST" (A8350; A8353-64; A8066 at 55-57). BLAST received transaction requests from merchant POS terminals, which requests contained data fields for (i) a merchant identifier that identified the sending merchant; (ii) a store identifier that identified the sending store; (iii) a terminal identifier that identified the initiating terminal; (iv) a card identifier; and (v) transaction type (A8221-22; A8245-82; A6605).  The following schematic illustrates the operation of the accused Blackhawk system:

**The Accused Blackhawk System:**



(A8529).

Once a transaction request was received by BLAST, BLAST performed a series of "validations" to determine whether to permit further processing of the transaction (*e.g.*, A8363; A8338-40; A8401; A8456-58; A6929-34). The jury correctly found that BLAST did not, as Blackhawk asserts, "automatically route[] all transaction requests . . . regardless of the particular transaction type being requested" ( Blue Br. at 22). To the contrary, one of the validations that BLAST always performed was to determine whether the terminal that initiated the transaction was authorized to perform the requested transaction (*e.g.*, A8342-49; A6929-34). BLAST performed this validation by checking whether the merchant (and hence all of its terminals) was authorized to request the specific transaction **type** in the request (*see id.*; A8453-55; A8363; A8338-40; A8401; A6929-34;

14

A6723-30).  Specifically, BLAST pulled a record for the merchant or RAP[1] to see

what transaction "privileges" the RAP had been given (A8453-55; A6929-34;

A6723-30).  These "privileges" indicated what transaction types a RAP could

perform (*see, e.g.*, A8447-49, A8503 at 171:19-172:2-9; A6929-34; A6723-30).  If

the RAP's privileges were identified as "ALL," it meant the RAP, and hence all of

the RAP's terminals, were authorized to request every transaction type the system

was able to process and the transaction would proceed (*e.g.*, A8342-49, A8504-5 at

176:15-179:5; A6929-34; A6723-30).  If, however, the privileges were set to

something other than "ALL," *e.g.* only activation and deactivation, the transaction

type in the transaction request would be compared to the list of allowed transaction

types for the RAP (*id.*).  If there was a match, it meant the RAP, and thus all of its

terminals, were authorized to request the transaction type in the requested

transaction (*id.*).  If there was no match, it meant the RAP and its requesting

terminal were not authorized for the transaction type, and the transaction would be

denied (*id.*).

When a merchant's terminal was authorized to request the requested

transaction type, BLAST initiated the processing of the transaction by either

sending it to Blackhawk's BLISS platform for transaction authorization or to a

third-party service provider for authorization, depending on the card (A8035-36 at

---

[1] Blackhawk calls its merchant customers Retail Alliance Partners, or RAPS.

237:13-238:11; A6981:1-6982:13).  In other words, the actual change of status

(*e.g.*, from activation to deactivation) occurred either at Blackhawk within its

BLISS platform or at the platform of a third-party processor.  Blackhawk then

returned a message to the POS terminal indicating whether the transaction was

successful (*e.g.*, A8433-36; A8350; A8346-48; A8085-86 at 130-36).

IV.    **Blackhawk's Requests for Reexamination of the '439 Patent.**

   A.    **Blackhawk's Request for *Ex Parte* Reexamination.**

On June 28, 2010, Blackhawk filed with the PTO a request for *ex parte*

reexamination of certain claims of the '439 Patent, including asserted claims 1 and

19 and a number of dependent claims (A299, 323-24).  That reexamination

concluded on July 12, 2011, with the PTO confirming the patentability of all

claims (A133).  With regard to claims 1 and 19, the examiner stated as one of the

reasons for allowance that none of the cited art taught "determining if the

requesting terminal is authorized to request the requested transaction type for the

stored value card in combination with the remaining elements or features of the

claimed invention" (A1377-78).

At no time did InComm argue that the independent claims of the '439 Patent

required the Determining Step to be based on the terminal identifier or transaction

type in the transaction request, nor do any of the statements made during

reexamination constitute a disclaimer as to the scope of the Determining Step.  To

the contrary, the statements cited by Blackhawk are either taken out of context, refer to the dependent claims, or are consistent with the district court's construction of the Determining Step.

### B. Blackhawk's Request for *Inter Partes* Reexamination.

While the *ex parte* reexamination was pending, Blackhawk filed a request for *inter partes* reexamination of all claims of the '439 Patent (A3983). Blackhawk made a number of admissions during that proceeding regarding the Determining Step that undermine the claim construction position it now asserts and that directly support the district court's construction of the Determining Step.

Although Claims 1 and 19 currently stand rejected, InComm has appealed the examiner's decision to the Patent Trial and Appeal Board and has filed a Petition to Terminate the proceeding (A4933). [2]

### V.    The District Court Proceedings.

On February 20, 2010, the parties consented to trial before Magistrate Judge Stephen Crocker (A8525-26).

---

[2]  InComm's Petition to Terminate is based on Blackhawk's failure to sustain its burden of proving the invalidity of claims 1 and 19 in the district court proceedings. Specifically, Blackhawk opted not to pursue its invalidity defense at trial, but did not dismiss its invalidity claim and expressly reserved the right to appeal the district court's rulings related to invalidity (A8227-28).   Blackhawk thus placed the validity of the asserted claims at issue in the district court proceedings but failed to sustain its burden of providing the invalidity of those claims and did not appeal any issues related to invalidity.  The *inter partes* reexamination should be dismissed *See* 35 U.S.C. § 317(b) (2002).

17

A.    **InComm's Expert Report on Infringement Accused Blackhawk's Stored-Value Card Authorization System as a Whole of Infringing Claims 1 and 19.**

In his report, InComm's infringement expert, Kenneth Maliga, identified both BLAST and BLISS as part of Blackhawk's infringing platform (A5410-12). Mr. Maliga noted that "Blackhawk operates a platform designed to process transaction requests for stored value cards, which platform includes (but is not limited to) the ability to activate, redeem, and reload stored value cards at particular merchants, locations, and terminals" (A5410). Mr. Maliga explained that once the transaction request is received by BLAST, "BLAST is designed to perform a series of 'validations' on the request to determine whether to permit further processing of the transaction" (A5411). The report explained how one of these validations satisfied the Determining Step (A5421-23). The report further explained that after BLAST performed these validations, "Blackhawk will process the message accordingly – **either sending it to its BLISS platform for transaction authorization or to a third-party service provider for authorization**" (A5412) (emphasis added).

Mr. Maliga also opined that BLAST initiates the requested transaction by sending the transaction request to the platform that holds the database of card records, which in some cases is maintained by either a third party processor or by Blackhawk (A5424). Mr. Maliga explained that where Blackhawk maintains the

18

database, "BLAST sends the transaction to its **BLISS platform, which will approve or deny [i.e., perform] the transaction"** (A5424, 35-36) (emphasis added). Mr. Maliga's report was thus clear that BLAST performed the Initiating Step by formatting and sending the transaction to BLISS where the transaction itself, *e.g.*, activation, was performed.

## B. Mr. Maliga's Trial Testimony Was Consistent with His Expert Report.

During InComm's case-in-chief, Mr. Maliga explained in great detail that Blackhawk infringed because Blackhawk's BLAST central processor performed every step of claims 1 and 19, including the Determining and Initiating Steps (A6388-448; A6455-64). While recognizing that BLAST did not **perform** the requested transaction, Mr. Maliga distinguished between performing and initiating, such that BLAST did "initiate" the transaction (A6382:4-8).

At no point did Mr. Maliga opine that BLISS performed the Initiating Step, and he further testified that he strongly disagreed with Ms. Breitzke's opinion (as set forth in her report and deposition) that to satisfy the Initiating Step, BLAST must perform the entire transaction (A6445). Mr. Maliga was then asked whether, assuming Ms. Breitzke were correct that "only the entity that performs the transaction can be the entity initiating the transaction," he agreed with her that Blackhawk did not infringe. Mr. Maliga responded:

> No. Once it goes through the formatting and it does the initiating
> of the request, it sends it to BLISS, which is Blackhawk. So -- **and
> BLISS is performing the transaction**, so the performance resides
> within the patent claim and also Blackhawk.

(A6446) (emphasis added).  This testimony was perfectly consistent with Mr.

Maliga's expert report in which he indicated that BLISS actually performed the

transaction.  Blackhawk did not object either to the question eliciting Mr. Maliga's

response or to the response itself.

### C.    Ms. Breitzke Offered a New Claim Construction Position and Non-Infringement Theory for the First Time at Trial.

During Blackhawk's case-in-chief, Ms. Breitzke opined, as she did in her

expert report, that BLAST did not perform the Initiating Step (A5507-08; A6895).

However, she also testified, **for the first time**, that the transaction itself was

initiated by Blackhawk's BLISS computer, which is not a central processor

(A6895, A6979).  She also offered, **for the first time**, an opinion that the preamble

of claims 1 and 19 **required** the Initiating Step to be performed by the central

processor, when in fact, neither the preamble nor the Initiating Step had ever been

so construed (A5766-68).  Using that improper construction, Ms. Breitzke offered

a new non-infringement theory – that BLISS initiates the transaction, but because it

is not a central processor it cannot satisfy the Initiating Step.  However, under the

proper construction of the Initiating Step, which did not require it to be performed

20

by the central processor, Ms. Breitzke's new non-infringement theory did not
establish non-infringement.

When InComm's counsel objected to Ms. Breitze testifying to an improper
construction of the Initiating Step, the district court sustained the objection, agreed
it had not previously construed the Initiating Step to require performance by the
central processor, admonished Blackhawk for not having previously sought a
construction of the preambles, and noted that Blackhawk's failure to request
construction left InComm thinking it had been "sandbagged" ((A6817-18) ("But
why are we sitting here now with the preamble being offered at the very last
minute with no request for an instruction or construction by the Court, and then
apparently, and I know you don't think you've sandbagged InComm, but now
InComm thinks it's been sandbagged?"))

It was only then that Blackhawk raised a belated objection to Mr. Maliga's
earlier testimony that if Ms. Breitzke were correct that only the card processor
(*e.g.*, BLISS) initiates the transaction, Blackhawk would still infringe (A6825-27).
Now aware of the problem with its "new" non-infringement theory, Blackhawk
belatedly attempted to foreclose InComm from noting the problem to the jury
(A6841). Making matters worse, Blackhawk accused *InComm* of unfairly
asserting a new theory of infringement and of forcing Blackhawk "to redo its entire
case overnight," when in fact, Blackhawk was left to rework its case because its

case was based on a claim construction the district court did not render  (Blue Br. at 5).

### D.    The Jury's Finding of Infringement and Damages.

Despite Blackhawk's belated objection to Mr. Maliga's testimony regarding BLISS, Blackhawk failed at the close of the liability phase to request a question on the verdict form asking the jury to state, if infringement were found, whether BLAST or BLISS performed the Initiating Step.  The jury returned a verdict of infringement on both claims 1 and 19, at which point the trial proceeded to the damages phase (A110).

At the close of the damages phase, Blackhawk asked the district court to instruct the jury (the same jury from the liability phase) to award no damages if it had based its finding of infringement on BLISS performing the Initiating Step (A7121).  The district court agreed and thereafter instructed the jury:

> If you conclude that BLISS performs the initiating step of Claims 1 and 19 of the '439 patent, you should not award damages. The evidence related to transactions involving BLISS is too speculative to support an award of damages.

(A108).  During closing arguments, Blackhawk's counsel quoted this instruction to the jury and reiterated that "if BLISS was part of the damages you made to find infringement and you're walking down the BLISS road, the number then would be zero" (A7717).

After deliberation, the jury returned a damages award of over 3.4 million dollars, removing any doubt that the jury found that Blackhawk infringed because BLAST performed all claimed steps (A111).

## SUMMARY OF THE ARGUMENT

The district court's claim constructions, evidentiary rulings, and denial of Blackhawk's Rule 60(b) motions were correct and should be affirmed.

The district court's construction of the Determining Step is mandated by the claims, the specification, and other intrinsic evidence.  In contrast, Blackhawk advances a flawed and impermissibly narrow construction of the Determining Step, which is inconsistent with the claim language, the specification, and Blackhawk's own admissions during reexamination.  Blackhawk's proposal to construe the Determining Step to be based on the terminal identifier and transaction type contained in the transaction request is the perfect example of what this Court has continually cautioned against – reading into the claims limitations from exemplary embodiments in the specification.  Blackhawk also takes statements made by InComm during the reexaminations of the '439 Patent out of context, distorting the intended and understood meaning of InComm's arguments.  In context, the statements in no way support Blackhawk's claim construction position.

The district court also properly construed the Initiating Step in accordance with the claim language and specification.  The claim language does not dictate

23

Blackhawk's construction requiring the central processor to perform the Initiating Step. Indeed, the claims are completely silent as to what component of the recited "card data management system" initiates the transaction. Again, Blackhawk adds limitations to the claims that do not otherwise exist. Moreover, nowhere does the '439 Patent equate, as Blackhawk does, "initiating" with "processing." Indeed, when the inventors wished to discuss the processing of a transaction, they used the term "processing," making clear that "initiating" means something other than "processing." Because Blackhawk does not dispute that it infringes under the district court's construction, the district court should affirm the jury's finding of infringement.

The district court did not abuse its discretion when it refused to strike Mr. Maliga's testimony that Ms. Breitzke's non-infringement theory relating to the Initiating Step did not avoid infringement. There was ample basis for the exercise of that discretion, including the district court's finding that Mr. Maliga's testimony was sufficiently disclosed during discovery. In any event, any "error" in not striking the testimony was harmless, since InComm secured the same testimony directly from Ms. Brietzke and because the jury confirmed through its damages award that its finding of infringement was based on BLAST performing all claimed steps.

Finally, the district court did not abuse its discretion when it denied

Blackhawk's Rule 60(b) motions. As shown herein, InComm did not, as

Blackhawk accuses, engage in "surprise, misrepresentation, and misconduct" at

trial.

## ARGUMENT

### I.    Standard of Review.

Blackhawk has appealed the district court's constructions of the Determining

and Initiating Steps (Blue Br. at 40-58). Claim construction is a matter of law

which this Court reviews *de novo*. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558

F.3d 1368, 1374 (Fed. Cir. 2009) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d

1448, 1455-56 (Fed. Cir. 1998) (en banc)).

Blackhawk also suggests that the district court abused its discretion on an

evidentiary issue, *i.e.*, not striking Mr. Maliga's testimony that if, as Ms. Breitzke

contended, BLAST did not satisfy the Initiating Step, Blackhawk would still

infringe in light of her admission that BLISS satisfied the Initiating Step (Blue Br.

at 60-63). This Court "review[s] a trial court's decision in an evidentiary matter

under an abuse of discretion standard and will only disturb the trial court's ruling if

it prejudiced substantial rights and was thus not harmless error." *Air Land*

*Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341 (Fed. Cir. 1999) (citing

*Applied Med. Resources Corp. v. United States Surgical Corp.,* 147 F.3d 1374, 1380 (Fed. Cir. 1998).

Finally, Blackhawk appeals the district court's denial of its Rule 60(b) motions (Blue Br. at 63-65). "The Seventh Circuit, and therefore this [C]ourt, uses an abuse of discretion standard to assess the merits of Rule 60(b) questions." *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1369 (Fed. Cir. 1999) (citation omitted). This Court's "review of the denial of a Rule 60(b) motion is highly deferential." *Peters v. Gilead Sciences, Inc.*, 429 F. App'x 623, 624 (7th Cir. 2011) (citation omitted).

## II.    The District Court's Claim Constructions Were Correct.

The district court correctly construed the Determining and Initiating Steps. The plain meaning of these claim terms and the other intrinsic evidence require the district court's constructions.

### A.    The District Court's Construction of the Determining Step Is Mandated by the Intrinsic Record.

The district court correctly construed the Determining Step in accordance with the term's plain meaning, finding that this step does not need to be based on either the transaction type or the terminal identifier in the transaction request (A8181at ¶ 14). This construction is the only construction supported by the claim language, the specification, and prosecution history.

### 1.     The Claim Language Mandates the District Court's Construction.

Both method claim 1 and computer program claim 19 recite, in part:

(A)     receiving from a requesting terminal a transaction request that comprises:

    (1)     a requesting terminal identifier; and

    (2)     a card identifier assigned to a card; and

    (3)     information indicative of a requested transaction type

(B)     **determining if the requesting terminal is authorized to request the requested transaction type for the stored value card;**

(*see* A130-31 at Col. 14:65-15:24, A132 at Col. 17:12-39) (emphasis added).  In these claims, the recited "transaction request" must contain at least three pieces of information – a requesting terminal identifier, card identifier, and transaction type (A130-132).  In addition, the claims require a determination that the terminal initiating the request is authorized to request the transaction type at issue (*id*.).  For instance, if the requested transaction type is "deactivation," a determination must be made that the terminal that initiated the deactivation transaction request is authorized for deactivation requests (A8183-84 at ¶¶ 20-21).

While claims 1 and 19 both require that the transaction request **contain** a requesting terminal identifier and transaction type, those claims do not state, imply, or otherwise indicate that the determination as to whether that requesting terminal is authorized to request the transaction type must be based on the terminal

identifier or the transaction type contained in the transaction request (A8180-81 at

¶¶ 12-13).  To the contrary, as long as the determination is made, it does not matter

what information is used to make the determination.

For example, if a merchant is authorized to perform all available transaction

types, and an activation transaction is sent, a determination can be made based on

the merchant identifier that the merchant is authorized for all transaction types (*see*

A128 at Col. 10:53-66).  If the merchant is authorized for all transaction types, it

necessarily means that all of the merchant's terminals are authorized for all

transaction types, which in turn means that the requesting terminal is authorized for

activation transactions.  In this instance, a determination has been made that the

requesting terminal is authorized to request the requesting transaction type without

consideration of either the terminal identifier or the transaction type in the

requested transaction.

Thus, the plain language of the Determining Step belies Blackhawk's

construction.  Indeed, the claims do **not** say "determining **based on the terminal**

**identifier and transaction type** if the requesting terminal is authorized . . . ," as

Blackhawk would now have it read (A130-32).  Even Blackhawk itself expressly

recognized during reexamination that the claims are silent with respect to what

information is to be considered in order to make the determination:

> Considering now the language of claim 1, it is noted that the
> transaction request received from the requesting terminal includes

three pieces of information; namely, a requesting terminal identifier, a card identifier assigned to a stored value card, and information indicative of a requested transaction type.  However, contrary to Patent Owner's assertions, the **'determining' limitation of claim 1 does not explicitly or implicitly specify how these three pieces of information are to be evaluated** in order to determine whether or not a requesting terminal is authorized relative to a particular transaction.  **That is, the plain language of claim 1 does not require that this determination be 'on the level of transaction type' . . . ."**

(A4423-24) (emphasis added).

Nor do the claims state, as Blackhawk proposes, "determining whether the requesting terminal **identifier** is authorized . . . ." (Blue Br. at 40) (emphasis added).  Blackhawk's proposed construction simply rewrites the claims to add the word "identifier" when it does not otherwise appear.  It is improper for courts to rewrite claims.  *See, e.g.  D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985) ("As a general rule a limitation cannot be read into a claim to avoid infringement"); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language.")

The inventors knew what a terminal identifier was, since that term appears in other portions of the claims, yet they chose **not** to include the word "identifier" after the word "terminal" in the Determining Step (A130-32).   An ordinarily skilled artisan would thus understand that the claims are broad enough to cover determinations as to whether the requesting terminal is authorized to request the

transaction type based on information **other than** the terminal identifier (A8179-84 at ¶¶ 8-21).

Because the claim language does not include the limitations Blackhawk proposes, there must be clear support in the specification or file history to deviate from the claim language and to read Blackhawk's proposed limitations into the claims. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified."). As shown below, there is no such support.

### 2. The Specification Supports the District Court's Construction.

### i. The Specification Does Not Limit the Recited Determination to the Terminal Identifier.

Blackhawk mistakenly relies on the specification to require the Determining Step to be based on the terminal identifier. As described in the specification, transaction authorizations can be made at (i) a merchant level – in which case all of the merchant's terminals will have the same privileges, (ii) a store/location level – in which case all terminals at a particular store will have the same privileges, but the allowed privileges may vary among the merchant's stores; or (iii) at a terminal level, in which case each terminal within a merchant's store/location will have its

own set of privileges, which may or may not differ from the privileges of other terminals within the location (A8180-81, 83 at ¶¶ 10, 13, 20; A125 at Col. 4:13-31). Allocating authorizations to any one of these levels allows a determination to be made as to whether the terminal requesting the transaction is authorized to request the transaction type, without regard to whether the terminal identifier is used to make the determination (A8182-84 at ¶¶ 18, 20-21). The specification expressly describes this hierarchical flexibility of the Determining Step:

> The system allows for controls to be established at any of these levels so that, for example, a particular merchant could be authorized to request activation, deactivation and recharging of a stored-value card while another merchant is authorized to request redemption of stored-value card value. Authorization of various functions may also be allocated to a particular set of terminals controlled by a given merchant or at a given location.

(A125 at Col. 4-13-31).

For example, a transaction request that contains a requesting terminal identifier, a card identifier, and a transaction type, as recited in the claims, can also contain (i) a merchant identifier and (ii) a store/location identifier (most transaction requests do contain such information) (A8179-83 at ¶¶ 8-19). Such a transaction request would satisfy the asserted claims' requirement that the transaction request contain a requesting terminal identifier, card identifier, and transaction type. *CIAS, Inc. v. Alliance Gaming Corp., et al.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007) ("Correctly construed, 'comprised of' does not of itself exclude the possible

presence of additional elements or steps."). Once that transaction is received, a determination can be made based on, for instance, the merchant identifier**,** that the merchant, and thus all of the merchant's terminals including the terminal that initiated the request, are, or are not, authorized to perform the requested transaction type (A8183 at ¶ 20). So if a terminal of a merchant authorized for activation transactions sends a deactivation request, in determining that the merchant is not authorized to request card deactivations, a determination has necessarily been made that the requesting terminal is not authorized to perform deactivation transactions because none of the merchant's terminals are so authorized (*id.*). As noted above, the determination can also be made on a store/location level (A8180-82 at ¶¶ 13, 17). That is, if a determination is made that the initiating store/location is not authorized to perform deactivation requests, then a determination will necessarily be made that each terminal in that store, including the initiating terminal, is not authorized to perform deactivation requests (A8183-84 at ¶ 21).

The district court's construction of the Determining Step is supported by other portions of the specification as well. Indeed, the specification explains that the "authorizations of any given terminal 112 at the bottom level **are limited by the authorizations of each entity in the chain** between that terminal 112 and the first level merchant at the top" (A127 at Col. 7:41-48) (emphasis added). Thus, if a merchant or a store/location is authorized to request a particular transaction type,

*e.g.* deactivation, it means that all terminals of that merchant or store/location are authorized to request that transaction type (A8180, 83-84 at ¶¶ 10, 20-21).

The specification further discloses an embodiment in which the determination as to whether the requesting terminal is authorized for the transaction type is **not** based on a terminal identifier.  Specifically, Figure 1 discusses authorizations for "activation, deactivation and recharge" and an embodiment where "central processor 116 will maintain records in the database 118 that **associate these authorizations with the location 4** and/**or** the terminal 112 for the specific cards provided to the merchant" (A126 at Col. 5:48-60) (emphasis added).  This "or" scenario thus posits a situation where authorizations are set on a store/location basis (*id*.).  Thereafter, the specification states that if "the central processor 116 receives from the terminal 110 a request to redeem the value of that same card, **it will deny the request because the terminal 110 is not authorized to request redemptions**" (*id*.) (emphasis added).  Put differently, a determination is made that the requesting terminal is not authorized to request redemptions, even though the redemption authorization was made on a store/location, not a terminal, basis (*id*.).

Blackhawk's construction, which requires that the Determining Step be based on the terminal identifier, excludes this embodiment.  Constructions that exclude from the claims an embodiment described in the specification are rarely, if

ever, correct. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

### ii.    The Specification Does Not Limit the Recited Determination to the Transaction Type.

While the specification of the '439 Patent addresses the Determining Step a number of times, not once does it indicate that the recited determination must be made by looking at the transaction type in the transaction request.  For instance, both the Abstract and the Summary of the Invention say nothing more about the Determining Step than: "The method further comprises determining if the requesting terminal is authorized to request the requested transaction type for the stored value card" (A124 at Abstract and 1:63-65 ("Summary of the Invention")). No limits are provided as to how the determination is made.  Even under the heading "Detailed Description of **Exemplary** Embodiments," there are **no** examples in which the determination is made by looking at the transaction type in the transaction request.  For instance, in referencing the Determining Step, the patent states only "the central processor is configured for receiving stored-value card transaction requests from one or more terminals, **determining authorization for the requested transactions**, and processing and storing stored-value card data . . ." (A125-26 at 4:43-47; see also 5:6-9; 5:54-60; 6:4-6) (emphasis added). While a determination must be made that the requested transaction is authorized,

34

the specification does not say that it must be made only upon consideration of the transaction type in the transaction request (*see* Section II.A.1 *supra*).

Even in the one embodiment which shows **how** the Determining Step can be performed, there is no mention of the computer looking at the transaction type in the transaction request:

> If the terminal identifier is associated with the stored-value card a determination as to whether the terminal is authorized to request the current transaction type may be made at S160. **This may be accomplished by checking the transactions associated with terminal for this stored value card**.

(A129 at 11:12-17) (emphasis added). In this example, the computer is checking not the transaction type in the transaction request, but the list of authorized transaction types in the database. If the list uses the shortcut "all transaction types" instead of individually listing every transaction type, the system will know the requested transaction type is permitted without looking at the requested transaction type in the transaction request[3] (*see id*. at 11:19-31).

Even Blackhawk has conceded that the specification does **not** provide a basis for limiting the Determining Step to be based on the transaction type:

> The specification of the '439 patent also does not evidence an intent to affirmatively limit the scope of the 'determining' limitation or otherwise require *how* this limitation is to be performed. . . . . [t]he specification **fails to mandate any**

---

[3] There is no difference between a database using the shortcut "all transaction types" instead of individually listing each possible transaction type (A5423-24).

**particular mode in which this determination is to be effected** . . . .

(A4424) (emphasis added).  Blackhawk's concession comports with the patent specification, which makes clear that "[t]he stored-value card systems of the invention provide the capability to allocate authorizations **at any of the four layers** shown in this hierarchy.  For example, the first level **merchant 501 may be given a set of authorizations for <u>all</u> transaction requests** for the cards distributed directly to it . . . . (A127 at Col. 7:29-34) (emphasis added).

In short, there is nothing in the specification to support limiting the Determining Step to require that the system look at the transaction type in the transaction request to make the claimed determination.  In fact, adding such a limitation to the construction of the Determining Step goes *beyond* importing a limitation from the specification into the claims; it actually imports a limitation that does not appear in the specification into the claims.  *E.g.*, *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) ("[i]n examining the specification for proper context," it is improper to "import limitations from the specification into the claims").

### iii. The Inventors Explicitly Recited the Use of Terminal Identifiers When They Wanted to Do So.

The language of other claims supports the district court's construction.  Indeed, when the inventors intended for the determination to be based on the

terminal identifier, they explicitly said so.  While claims 1 and 19 recite the

Determining Step with no restrictions as to how that determination is to be made,

dependent claims 4 and 22 specifically recite "wherein the action of determining if

the requesting terminal is authorized comprises the action of: comparing the

requesting terminal identifier to the set of authorized terminal identifiers" (A131-

32: at Col. 15:33-37, Col.17:48-18:2).  In those claims, the determination **is** based

on the terminal identifier.

The patentees' inclusion of a terminal identifier restriction in certain claims

and their exclusion of that restriction in asserted claims 1 and 19 further support

the district court's construction.  *See Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,

177 F.3d 968, 971-72 (Fed. Cir. 1999) (it is "common sense" "that different words

or phrases used in separate claims are presumed to indicate that the claims have

different meanings and scope . . . .") (citation omitted).

### B.   The Intrinsic Evidence Repudiates Blackhawk's Construction of the Determining Step.

Blackhawk's narrow construction of the Determining Step should be

rejected because it (i) is based on a misinterpretation of the claim language; (ii)

constitutes an inappropriate attempt to limit the scope of the invention to

exemplary embodiments in the specification; and (iii) misstates arguments made

during reexamination.

### 1.     Blackhawk Misinterprets the Claim Language.

Blackhawk argues that claims 1 and 19 "implicitly" require that the Determining Step be based on the attributes received by virtue of the previous claim step, which include the transaction type and the terminal identifier (Blue Br. at 40-41).[4]  Blackhawk's resort to arguing that such a requirement is **implicit** underscores that there is nothing **explicit** in the claims that requires the determination to be based on any particular piece of information.

Blackhawk is also wrong that "it would be illogical to deliberately recite three attributes in the 'receiving' step, only to completely ignore them in the subsequently 'determining' step" (Blue Br. at 42).  As noted above, there are claims that depend from asserted claims 1 and 19 which **do** require the determination to be based on the recited attributes.  Thus, the claims do not "ignore" the recited attributes.  Rather, the dependent claims explicitly rely upon them, while independent claims 1 and 19 are broad enough to include determinations made with, or without, reliance upon them.  The patent describes at least two other ways that the determination can be made, *e.g.*, on a merchant level or a store level basis (A8179-84 at ¶¶ 8-21).

---

[4] Notably, Blackhawk does not assert that the Determining Step must be based on the "card identifier," even though the card identifier is one of the three attributes. It is illogical for Blackhawk to argue, that claims 1 and 19 "implicitly" require the determination to be based on only two of the three attributes.

Because there is nothing in the language of the independent claims that limits how the Determining Step must be performed, it is improper to limit that step to require consideration of terminal identifiers.

### 2. The Specification Refutes Blackhawk's Construction.

InComm has never disputed that the asserted claims require the transaction request to **include** a terminal identifier and requested transaction type. Rather, the dispute concerns whether the Determining Step **must** be **based** on these two pieces of information, when nothing in the specification states or suggests that is the case (*see* A113 at Abstract, A124-25 at Col. 2:45-3:3).

While InComm acknowledges that the Determining Step **can** be based on the terminal identifier and/or the transaction type, there is no **requirement** that it must be (A8180-81 at ¶¶ 12-13). Indeed, the specification only discusses determinations that are based on the terminal identifier as exemplary embodiments, and it never discusses the determination being based on the transaction type (A5784-85). Because the patent uses the words "may" and "exemplary" when it describes basing the determination on a terminal identifier – and describes no embodiments in which the determination is based on the transaction type – it would be contrary to Federal Circuit precedent to read these limitations into the claims. *Kara Tech. Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him

to his preferred embodiment or import a limitation from the specification into the claims."); *Epistar Corp. v. ITC*, 566 F.3d 1321, 1331 (Fed. Cir. 2009) (refusing to find that "exemplary" statement in specification is limiting).

### 3.    InComm's Statements During Reexamination Do Not Support Reading Either a Terminal Identifier or a Transaction Type Limitation into the Determining Step.

Blackhawk's reliance on arguments made during reexamination to support its narrow claim construction position is misguided.  Although statements made during reexamination are "relevant prosecution history when interpreting claims," it is well established that claims subject to reexamination must be given "'their broadest reasonable construction consistent with the specification.'"  *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988).  Moreover, "[f]or prosecution disclaimer to attach, [Federal Circuit] precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."  *Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1370 (Fed. Cir. 2010).

As shown herein, Blackhawk has taken several statements made during reexamination out of context in a transparent attempt to convince this Court that the patentees disavowed subject matter covered by the asserted claims of the '439 Patent.  Blackhawk's efforts should be rejected since the inventors' submissions during reexamination fully support the district court's construction.

### i.    The Examiner Interview Does Not Support Blackhawk's Construction.

It is ironic Blackhawk purports to tell this Court what was said about the '439 patent during an *ex parte* re-examination interview it did not attend. According to Blackhawk, particular slides shown during a presentation made to the Examiner during re-examination support its narrow claim construction position (Blue Br. at 42-43). Specifically, Blackhawk misinterprets these slides to mean that InComm "made clear that the attributes in the 'receiving' step were the basis for the subsequent 'determining' step" (Blue Br. at 43).

First, the slide referencing the Venn diagram does not mention the phrase "terminal identifier" (A1168). Rather, it uses the phrase "***Terminal Authorized***," which as described above, does not require consideration of a terminal identifier because a terminal can be "authorized" by virtue of privileges granted at a merchant or store/location level (A1168; A8180-84 at ¶¶ 10, 13, 20-21; A125 at Col. 4:13-31). Moreover, inventor Phil Chakiris, who attended the presentation, testified that this slide was discussed as an **exemplary** embodiment of the invention and that the exemplary nature of the slide was made clear to the Examiner during the interview (A8311 at 108:8-109:3; A8331 at 187:7-188:2).

Second, Blackhawk claims that a subsequent slide, which juxtaposes the Venn diagram "alongside claim 1, with bold text to emphasize the 'receiving' and 'determining' steps, as well as the 'terminal identifier,' 'transaction type,' and

'card identifier' attributes" recited in the receiving step, "eliminate[s] any doubts" as to what the "determining" step is based on (A5789; A1172). Yet nowhere in the cited slide is there any evidence that the presenters intended to, or did in fact, correlate the "Terminal Authorized" portion of the Figure to the "terminal identifier" language of claim 1.

Not surprisingly, Blackhawk excludes from its brief statements made during reexamination that undermine its position, including:

- "It is clear . . . that claim 1 contemplates a determination of whether the terminal is authorized for transaction type, **irrespective of transaction details** such as the card identifier – even if the card identifier is ultimately considered" (A1230 (emphasis added)); and

- "the independent claims of the '439 feature a determination that transcends authorization for a particular transaction and instead **focuses on general terminal authorization to conduct transactions of a particular type**" (A1235 (emphasis added)).[5]

Moreover, Blackhawk itself made arguments during the *inter partes* reexamination in which it conceded that the claims do **not** require consideration of the transaction type:

- Considering now the language of claim 1, it is noted that the transaction request received from the requesting terminal includes three pieces of information; namely, a "requesting terminal identifier, a card identifier assigned to a stored value card, and information

---

[5] Blackhawk may mischaracterize these arguments as "retractions" of earlier arguments, as it did in its claim construction brief (*see* A5575-76). Not only is there nothing in the record to support that assertion, but these arguments are perfectly consistent with InComm's position throughout the reexamination – that there is more than one way to perform the Determining Step.

indicative of a requested transaction type.  However, contrary to Patent Owner's assertions, the **'determining' limitation of claim 1 does not explicitly or implicitly specify how these three pieces of information are to be evaluated** in order to determine whether or not a requesting terminal is authorized relative to a particular transaction. **That is, the plain language of claim 1 does not require that this determination be 'on the level of transaction type' . . . .**"; and

- The specification of the '439 patent also does not evidence an intent to affirmatively limit the scope of the 'determining' limitation or otherwise require *how* this limitation is to be performed.  . . . . [T]he specification fails to mandate any particular mode in which this determination is to be effected . . . .

(A4423-24) (emphasis added).

## ii. Other Statements Made by InComm During Reexamination Do Not Support Blackhawk's Construction.

Blackhawk quotes seventeen statements made during re-examination that it claims constitute a disclaimer of the scope of the Determining Step.  As shown below, not one of the statements Blackhawk cites constitutes a "clear and unmistakable" disclaimer of subject matter sufficient to narrow the scope of the Determining Step.  *See Lazare*, 628 F.3d at 1370.

### (a) The Quotes in Table 1 of Blackhawk's Brief Do Not Constitute a Disclaimer.

Blackhawk cites to statements 1 through 6 in Table 1 of its brief as proof that InComm characterized the Determining Step as requiring an evaluation of the terminal identifier and transaction type (Blue Br. at 44-45 (citing Statements 1-6)).  Blackhawk is wrong.

43

While statements 1, 5, and 6 talk about the determination being based on the terminal identifier and transaction type, those statements are not tied in any way to independent claims 1 and 19. As noted, several dependent claims that were also the subject of the reexamination **do** base the determination on the terminal identifier and transaction type. Statements 1, 5, and 6, are perfectly consistent with a discussion of those dependent claims. Statements 2-4 are likewise unhelpful to Blackhawk, because they indicate nothing more than what the independent claims themselves state – that a determination must be made as to whether a particular transaction type is authorized for a particular terminal. These statements say nothing about **how** the determination is made nor do they indicate that an evaluation of the terminal identifier or requested transaction type is required. Indeed, statements 2 and 4 specifically point to "descriptive examples" in the specification where the terminal identifier and transaction type are considered, the phrase "descriptive examples" making clear that those pieces of information **may** be used to perform the determining step, but are not **required** (Blue Br. at 16, A1236, A4330). In not a single one of these statements did InComm represent that the **independent** claims require that the determination be based on the terminal identifier.

**(b)     The Statements Distinguishing the Weber Patent in Table 2 of Blackhawk's Brief Do Not Constitute a Disclaimer.**

Blackhawk next cites to statements 7-9 of Table 2 to support its disclaimer argument.  Blackhawk has yet again taken these statements out of context.  The cited statements concerning Weber were not made to disclaim coverage of the independent claims, but were a direct traversal of the Examiner's finding that Weber, in combination with Dawson, disclosed the Determining Step using a terminal identifier (A687; A1242-43).  The patentees responded by explaining that Weber did not use the terminal identifier "as the basis for authorizing a terminal to perform a requested transaction type" (A1243).  The patentees did not, however, make an affirmative statement regarding the scope of the independent claims of the '439 Patent – which is the typical prosecution disclaimer case.  Rather than constituting commentary on what is required or excluded by the independent claims, the statements merely respond to findings by the Examiner that certain attributes were disclosed in the prior art, by explaining that such attributes were in fact not disclosed (*id.*).  As a matter of law, such statements do not constitute a disclaimer sufficient to narrow the claims.  *See, e.g., Lazare*, 628 F.3d at 1369-70 (response to rejection that "none of the prior art references disclose" an attribute "fall[s] short of the clear and unmistakable disavowal necessary for the doctrine of prosecution disclaimer to apply").

      **(c)**        **Statements in Table 3 of Blackhawk's Brief Do Not Constitute a Disclaimer.**

Finally, statements 10-17 of Table 3 in Blackhawk's Brief (Blue Br. at 18-20) do not constitute disclaimers that the Determining Step requires an evaluation of the transaction type.  Each of these statements was made to explain the difference between a terminal being authorized for a transaction **type** – as set forth in the '439 Patent – and a terminal being authorized to conduct a **transaction**, as in the prior art.  In prior art systems such as those discussed in statements 10-17 (*i.e.* Murphree, Dorf, etc.), if a merchant or terminal were recognized as authorized to transact in the stored-value card system, the transaction would be allowed to proceed without consideration of what privileges the merchant or terminal may or may not have (A1248, A4334-35, A4338, A4346-47, A4365). In the '439 Patent, however, a requesting merchant or terminal can be authorized to transact with the system, but the transaction may nevertheless not be allowed if the merchant or its requesting terminal, while being authorized for some transaction types, is not authorized for the requested transaction **type**. Statements 10-17 were intended to draw this distinction.

For example, statement 13 provides that Claim 1 requires "an authorization determination that transcends the **requested transaction**, in consideration of a **requested transaction type**." (Blue Br. at 19) (emphasis added).  That is, it is not enough for the terminal to be authorized to perform transactions with the system;

46

the terminal must specifically be authorized to perform the requested transaction type, *e.g.* deactivation. This statement does not indicate that determining whether a terminal is authorized for the transaction type requires consideration of the transaction type sent in the request. For the same reason, none of the other statements cited in Table 3 of Blackhawks' brief mean what Blackhawk suggests.

There is thus no basis to construe the Determining Step to require consideration of the terminal identifier or transaction type in the transaction request.

### C.    The District Court's Construction of the Initiating Step Is Supported by the Intrinsic Record.

The district court correctly rejected Blackhawk's construction of the Initiating Step. Blackhawk's construction is flawed because it (i) imports a requirement found nowhere in the claim, *i.e.*, that the central processor do the "initiating"; and (ii) runs contrary to the ordinary meaning of "initiating" by construing "initiating" to mean "processing" (Blue Br. at 56).

### 1.    The Claim Language Does Not Support Blackhawk's Construction.

Blackhawk argues that the claims' preambles recite "a 'method' and a 'computer program,' both 'for processing a stored-value card transaction request in a card data management system having a central processor,'" thereby "imply[ing] that the 'central processor' is the structure that performs the 'processing'" (Blue

47

Br. at 50). But Blackhawk misquotes the preambles, which in fact recite a method and a computer program "for processing a stored-value card transaction request in a card data management system having a central processor **in communication with a plurality of point-of-sale terminals over a communications network**. . . the central processor being in communication with **a database having stored therein a plurality of card records.** . . ." (A132 at Col. 17:12-25) (emphasis added). In other words, the "card data management system" of claims 1 and 19 has multiple components in addition to a central processor. Even if Blackhawk was correct that there is an implication that the central processor must perform the transaction (it is not), the limitation at issue concerns "initiating the transaction," not "processing" or "performing' the transaction. There is nothing in the preamble or otherwise to indicate which component "initiates" the transaction.

### 2. Blackhawk's Construction Imports Limitations into the Specification.

Blackhawk argues that the Initiating Step must be performed by the central processor because "[t]he specification actively describes the central processor using words of action," which is "highly indicative that the central processor performs every step (Blue Br. at 53). While Blackhawk points to numerous **examples** of the central processor performing such acts as receiving, maintaining, verifying, completing, carrying out, and associating, there is nothing in the

48

specification to indicate that the central processor must "initiate" the transaction.[6]

Indeed, "initiating" is not discussed anywhere in the specification.

Blackhawk's proposed construction is also misplaced because it attempts to conflate the terms "initiating" and "processing," thereby ignoring the temporal aspect of the word "initiating" which denotes the **starting or triggering** of some process or event as opposed to carrying out an event to completion.  Although the patent does not define "initiating," the term's plain meaning belies Blackhawk's proposed construction.  *Compare* (A5649) citing (Merriam-Webster's Collegiate Dictionary 644 (11th ed. 2007) (Webster's) (defining "initiate" as "to cause or facilitate the beginning of") *with* Webster's, at 920 (defining "perform" as "to carry out an action or pattern of behavior").  Other than citing to irrelevant portions of the specification that discuss the actual "perform[ance]" of the claimed method (as opposed to "initiation" of the transaction), Blackhawk cites no support for its contention that "initiating" should be construed as "performing" (*see* A5594-95).  Blackhawk's proposed construction thus runs afoul of the plain meaning of the disputed claim term and should be rejected.  *See, e.g., CollegeNet, Inc.*, 418 F.3d 1225 (recognizing the distinction between "initiated" and "performed").

---

[6] Of course, in Blackhawk's system, the central processor, BLAST, does in fact initiate the transaction.  This does not mean, however, that the claims **require** the central processor to initiate the transaction.

### 3.    Claim 12 Does Not Impose a Central Processor Limitation.

Blackhawk next argues that un-asserted claim 12 somehow dictates that the central processor perform every limitation of asserted claims 1 and 19 because all three claims share some similar language (Blue Br. at 51-53).  Claim 12, however, recites a very specific embodiment of the invention, in which the central processor contains modules for performing certain functions, including:

> an associating module in the central processor configured for associating, in the database, a set of authorized terminal identifiers with each stored-value card record;
>
> a transaction authorization module in the central processor configured for determining, based on information in the transaction request and the database, whether the requesting terminal is authorized to request the requested transaction type; and
>
> at least one transaction processing module in the central processor configured for processing the requested transaction . . . .

(A131 at Col. 16:35-47.)  None of these modules are recited in claims 1 and 19 (A130 at Col. 14:65-15:24, A132 at Col. 17:12-39), and thus claim 12 is **not** the same "card data management system referenced in the preambles of claims 1 and 19" as Blackhawk claims (Blue Br. at 19).[7]

---

[7] Blackhawk's reliance on *Microprocessor Enhancement Corporation v. Texas Instruments, Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) is misplaced.  That case addressed a single claim with an "unconventional" "preamble within a preamble structure" and a challenge to a single claim based on indefiniteness under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).  The court noted that "method claim preambles often recite the physical structures of a system in which the claimed method is practiced."  *Microprocessor Enhancement Corp.*, 520 F.3d at 1374.  It in no way addresses whether the limitations of a claimed system required the importation of those limitations into a claimed method/computer program in the same patent.

Blackhawk's construction of the Initiating Step should thus be rejected.

## III.    The District Court Did Not Abuse Its Discretion in Refusing to Strike the Testimony of InComm's Expert.

Blackhawk accuses the district court of abusing its discretion by not striking Mr. Maliga's testimony that Blackhawk's non-infringement theory, in which BLISS performed the Initiating Step, did not establish non-infringement.  Mr. Maliga did not, as Blackhawk accuses, offer the jury a new infringement theory, as he consistently maintained throughout trial that BLAST and BLAST alone satisfied all of the claimed steps (A6381-82; A6391-95; A8457).  Mr. Maliga simply noted that if Ms. Breitzke were correct that only the component that processed the transaction (*e.g.*, BLISS) could initiate the transaction – and he made clear she was not correct – Blackhawk would still infringe (A6445:13-6446:7).  Maliga's testimony was less an infringement theory than a recognition that Blackhawk's new "non-infringement" theory was meritless.  Moreover, Mr. Maliga provided this testimony without objection from Blackhawk.  It was only later in the case, after the district court ruled that Ms. Breitzke could not testify that the Initiating Step must be performed by the central processor, that Blackhawk attempted to have Mr. Maliga's earlier testimony stricken as a new infringement theory unsupported by his expert report.

Even if Blackhawk's characterization of events were correct, however, for the reasons discussed below, the district court did not abuse its discretion in

refusing to strike Mr. Maligia's testimony.  Moreover, any error in not striking Mr.

Maliga's testimony was harmless because (i) the jury's verdict made clear the jury

found infringement based on BLAST's performance of all steps of the claims; and

(ii) Blackhawk's own expert provided the same testimony to which Blackhawk

now objects.

### A.    Mr. Maliga's Opinion Regarding BLISS Was Adequately Disclosed.

The district court correctly found that there was sufficient disclosure in Mr.

Maliga's expert report to support his trial testimony.  Indeed, his report stated that

once BLAST received a transaction request and performed the necessary

"validations," BLAST "process[ed] the message accordingly – **either sending it to**

**its BLISS platform for transaction authorization or to a third-party service**

**provider for authorization**" (A5412) (emphasis added).  There is thus no

question that Mr. Maliga's expert report contained sufficient support for his

testimony that BLISS performed the transaction, and therefore under Ms.

Breitzke's approach to the Initiating Step, Blackhawk would still infringe.

### B.    Any Error in Not Striking Mr. Maliga's Testimony Was Harmless.

Even if allowing such testimony were error, any error was harmless.

In order to disturb a trial court's ruling under the abuse of discretion standard, the

trial court must have committed an error which "prejudice[s] substantial rights."

*Air Land Forwarders, Inc.*, 172 F.3d at 1341.  Here, any error in permitting Mr.

Maliga's testimony to stand was harmless for the following two reasons.

### 1.    The Verdict of Infringement Was Based on BLAST Performing All Claimed Steps.

Although Blackhawk objected to Mr. Maliga's testimony regarding BLISS

before the jury's deliberations in the liability phase, it was not until the damages

phase that Blackhawk requested an instruction differentiating the damages to be

awarded based on whether the jury found BLAST or BLISS to satisfy the Initiating

Step (A108).  Specifically, over InComm's objections, the verdict form instructed

the jury that it must award zero damages if it found infringement based on BLISS

performing the Initiating Step (*id.*).  Blackhawk's counsel stressed this instruction

to the jury during closing arguments.  Thus, in awarding InComm over 3.4 million

dollars in damages, the jury was clear that it found infringement based on BLAST

satisfying the Initiating Step.  Because it was not the basis for the jury's finding of

liability, any error in allowing Mr. Maliga to testify about BLISS is harmless and

does not warrant reversal.

### 2.    Blackhawk's Own Expert Testified that BLISS Performed the Initiating Step.

Once the district court confirmed that the Initiating Step did not contain a

central processor limitation, Ms. Breitzke herself established the fallacy of

Blackhawk's new non-infringement theory.  Specifically, after testifying that

Blackhawk did not infringe because BLAST did not initiate the requested

transaction, Ms. Breitzke admitted that Blackhawk's **BLISS platform** did initiate

the requested transaction:

> Q.    If, in fact, your testimony is correct that the card processor initiates
> the requested transaction . . . then BLISS, as a card processor, is
> initiating the requested transaction.
>
> A.    Yes.
>
> . . .
>
> Q.    All right. So in those cases where BLAST sends the transaction to
> BLISS, then -- and BLISS initiates the transaction, then Blackhawk is
> satisfying the initiating step; correct?
>
> A.    Well, I don't have any, as I just said, I thought, I have no information -
> - I didn't look at BLISS, so I treat it as a service provider and card
> processor. I did not look at BLISS. I don't know if it does that
> determination piece. **But yes, it does initiate the transaction**.

A6981:1-6982:13 (emphasis added).

During closing arguments, InComm's counsel did not refer a single time to

Mr. Maliga's testimony regarding BLISS.  To the contrary, he told the jury that if

it found that BLAST did not perform the Initiating Step, Blackhawk still infringed

because of **Ms. Breitzke's testimony** that BLISS satisfied the Initiating Step:

> And so if you were to find that the card processor is the initiator,
> they still infringe because of BLISS and **Ms. Breitzke admitted
> that from the stand** at the very end of Ms. McGrath's cross-
> examination.

A7063:9-15 (emphasis added).  Simply stated, Mr. Maliga's testimony added

nothing more than what Ms. Breitzke herself provided.  Thus, even absent Mr.

Maliga's testimony, InComm's counsel could, and would, have made the same

argument.  Any error in letting Mr. Maliga testify about BLISS was thus harmless.

## IV.    The District Court Did Not Abuse Its Discretion in Denying Blackhawk's Rule 60(b) Motions.

Finally, the district court did not abuse its discretion by denying

Blackhawk's Rule 60(b) motions.[8]  Blackhawk argues that its Rule 60(b) motions

should have been granted by virtue of "surprise" under Rule 60(b)(1) or

"misrepresentation and misconduct" under Rule 60(b)(3) (Blue Brief at 64-66).

However, "[r]elief under Rule 60(b) is extraordinary and reserved for exceptional

circumstances."  *Peters*, 429 F. App'x at 624 (*citing McCormick v. City of*

*Chicago,* 230 F.3d 319, 327 (7th Cir. 2000)).  Blackhawk's arguments for reversal

---

[8] Blackhawk does not appear to appeal the district court's conversion of Blackhawk's rule 50 and 59 motions to Rule 60(b) motions.  Nor could it, since the Federal Rules make clear that "under Rule 6(b)(2), the deadlines set forth in Rules 50 and 59 are inflexible and may not be extended by district courts" (A61) (citing Rule 6(b)(2)); *see also Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1561 (7th Cir. 1990) (motion for new trial filed under Rule 59(a) was untimely even though filed within time allowed by court); *Blue v. Int'l Bhd. of Elec. Workers Local Union*, 676 F.3d 579, 582 (7th Cir. 2012) ("The fact that the district court purported to extend the time past that 28–day period is of no moment.  Civil Procedure Rule 6(b)(2) prohibits a court from doing exactly this.").  Where a Rule 50 motion is untimely filed, that motion must be converted to a Rule 60 motion since "the window has closed on [plaintiff's Rule 50 and 59 motions]." *Blue*, 676 F.3d at 585.  Moreover, as the district court recognized, "[m]erely entering a minute order that apparently extends the time for filing a motion under Fed. R. Civ. P. 59" – precisely what happened in this case – "is not enough to count as a 'specific assurance' from the court" sufficient to invoke the equitable tolling doctrine.  (A62) (quoting *Props. Unlimited,* 384 F.3d at 921 (citing *Green v. Bisby,* 869 F.2d 1070, 1072 (7th Cir. 1989)).

are meritless, and certainly do not constitute the "exceptional circumstances" necessary for reversal.

### A.    InComm Did Not Surprise Blackhawk at Trial.

As discussed above, InComm did not "surprise" Blackhawk with a new infringement theory.  Mr. Maliga simply pointed out that Blackhawk's new non-infringement theory did not establish non-infringement.  The only "surprise" at trial was Blackhawk's attempt to construe the Initiating Step to require a central processor limitation and its reliance on that construction to develop a new non-infringement theory.  Even the district court recognized that Blackhawk's attempt to paint InComm as unfair in light of Blackhawk's own actions was "uncompelling":

> [F]or [Blackhawk] to say that it's unfair for [InComm] to [offer BLISS testimony] when, at least from the Court's perspective, this construction was hidden under the leaves until trial, strikes me as uncompelling, okay?

(A6864:24-6865:3).  The district court thus did not abuse its discretion by denying Blackhawk's Rule 60 motion on the basis of surprise.

### B.    InComm Did Not Misrepresent Mr. Maliga's Testimony or Engage in Misconduct Before the District Court.

Blackhawk's "misrepresentation" and "misconduct" arguments likewise fail. First, InComm never represented to the Court that Mr. Maliga's report identified BLISS as performing the Initiating Step, as Blackhawk accuses.  What InComm represented is that Mr. Maliga's report disclosed that BLAST communicated with

BLISS, which is where the transaction itself is performed (A6825-26). That

representation was accurate, because Mr. Maliga's report indicated that after

BLAST performed its validations, "Blackhawk will process the message

accordingly – **either sending it to its BLISS platform for transaction**

**authorization or to a third-party service provider for authorization**" and that

"BLAST sends the transaction to its **BLISS platform, which will approve or**

**deny [i.e., perform] the transaction"** (*id.* at 14, 26, 37-38) (emphasis added).

Blackhawk's accusations of misconduct are also baseless. According to

Blackhawk, InComm engaged in misconduct by (i) accusing BLISS of satisfying

the Initiating Step for the first time at trial; and (ii) requesting an expanded

construction of the Initiating Step "to encompass Blackhawk's defense" (Blue Br.

at 66). As to the former, InComm did not accuse BLISS of satisfying the Initiating

Step; InComm simply noted that if, **<u>as Ms. Beitzke testified</u>**, BLISS did satisfy

that step, it did not help Blackhawk. As for the latter, if by requesting an

"expanded" construction Blackhawk means that InComm objected to Blackhawk's

improper, last-minute attempt to narrow the construction of the Initiating Step,

InComm disputes that such conduct constitutes "misconduct." If anything, it was

Blackhawk that engaged in misconduct by asserting a baselessly narrowed construction of the Initiating Step at trial.[9]

In any event, the jury's damages verdict made clear that the jury found BLAST performed the Initiating Step. Therefore, Blackhawk's Rule 60 motion should be denied.

## V.    THIS COURT SHOULD NOT REQUIRE REASSIGNMENT TO A DIFFERENT JUDGE IN THE CASE OF REMAND

If this Court agrees with Blackhawk and remands the case for a new trial, it should not reassign the case to a new judge under Seventh Circuit Rule 36. Rule 36 does not mandate reassignment, but "leaves [the Federal Circuit] free to . . . permit remand to the same judge." *Eolas Techs., Inc. v. Microsoft Corp.*, 457 F.3d 1279, 1283 (Fed. Cir. 2006). In fact, this Court has actually reversed a district court's reassignment under Seventh Circuit Rule 36, finding that remand to the same judge "best conserve[s] judicial resources." *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1353-54 (Fed. Cir. 2009) (citation omitted)). Other than citing to the text of the rule, Blackhawk has provided no justification

---

[9] The two cases Blackhawk cites to support Blackhawks' argument are inapposite. In *Lonsdorf v. Seefeldt*, a Rule 60(b)(3) motion was granted where it was "patently obvious" appellee "benefited from the use of a fraudulently altered document" and appellant "suffered an injustice" by the trial court's failure to exclude evidence regarding that document. 47 F.3d 893, 897 (7th Cir. 1995). *Ty Incorporated v. Softbelly's Incorporated* involved witness tampering, "extremely serious conduct" "requiring a commensurately severe sanction, quite possibly dismissal." 353 F.3d 528, 536 (7th Cir. 2003). No such egregious conduct occurred in this case.

for assigning a different judge to preside over a new trial.  This case has been

pending for nearly four years, and the trial judge is intimately familiar with the

'439 patent and the parties' respective liability positions.  Reassignment would

thus waste judicial resources and is simply not warranted.

### CONCLUSION

For the foregoing reasons, InComm respectfully requests that this Court

affirm the district court's claim construction rulings, evidentiary rulings, and denial

of Blackhawk's Rule 60(b) motion.

DATED:  June 24, 2013          Respectfully submitted,


By: _____
      ROBIN L. MCGRATH
      PAUL HASTINGS LLP
      1170 Peachtree Street, Ste. 100
      Atlanta, GA 30309
      (404) 815-2400
      (404) 815-2424

      FRANK G. SMITH III
      ALSTON & BIRD LLP
      1201 West Peachtree Street
      One Atlantic Center
      Atlanta, GA 30309-3424
      (404) 881-7000
      (404) 881-7777

      *Counsel for Plaintiffs-Appellees*
      e2Interactive, Inc. and Interactive
      Communications International, Inc.

# United States Court of Appeals
## for the Federal Circuit

*E2INTERACTIVE, INC. v BLACKHAWK NETWORK, INC., 2013-1151*

### CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PAUL HASTINGS LLP, Attorneys for Plaintiffs-Appellees to print this document. I am an employee of Counsel Press.

On **June 24, 2013**, Counsel for Plaintiffs-Appellees has authorized me to electronically file the foregoing **Brief for Plaintiffs-Appellees** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

ALAN M. FISCH
THOMAS C. CHEN
JASON F. HOFFMAN
R. WILLIAM SIGLER
FISCH HOFFMAN SIGLER LLP
5335 Wisconsin Avenue
Eighth Floor
Washington, DC 20015
(202) 362-3500
alan.fisch@fischllp.com
thomas.chen@fischllp.com
jason.hoffman@fischllp.com
bill.sigler@fischllp.com

*Attorneys for Defendant-Appellant*
*Blackhawk Network, Inc.*

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

June 24, 2013                                    /s/Elissa Matias
                                                 Counsel Press

## CERTIFICATE OF COMPLIANCE

Counsel for Appellees hereby certify that the foregoing brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  Based on the word count tool, the number of words in the foregoing brief, excluding the sections excludable under Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure and Federal Circuit Rule 32(b),  is 13,020 words.

I certify in addition that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of  Fed. R. App. P. 32(a)(6).  This brief has been prepared using Microsoft Office Word 2003 in Times New Roman, a proportionally spaced typeface including serifs, in 14 point font.

DATED:  June 24, 2013

Robin L. McGrath